(915 P.2d 137)
No. 73,241

FARM CREDIT BANK OF WICHITA, *Appellee*, v. CLEM A. J. ZERR and PAULINE ZERR, *et al.*, *Appellants*.

Opinion filed April 19, 1996.

*William J. Madden*, of Hays Legal Services, of Hays, for the appellants.

*Larry D. Tittel*, Ness City, for the appellee.

Before LEWIS, P.J., PIERRON, J., and JOHN W. WHITE, District Judge, assigned.

PIERRON, J.: Clem A. J. and Pauline Zerr challenge an order confirming the sale of their real estate at a sheriff's sale after Farm Credit Bank of Wichita executed on a deficiency judgment. The Zerrs also argue the district court set an improper redemption period and failed to consider the appraised value of the real estate in confirming the sale. We affirm in part, reverse in part, and remand for further proceedings.

The pertinent facts are not in dispute. In 1982, the Zerrs borrowed $620,000 from Farm Credit Bank of Wichita (FCB) and granted a mortgage on approximately 2,180 acres of farm land as security. As did many farmers, the Zerrs encountered financial difficulties and defaulted on the loan. On July 15, 1992, FCB filed its petition in district court seeking judgment for the amount owed and foreclosure of the mortgage securing the note. The Zerrs answered the petition, admitting default under the terms of the note and mortgage and requesting that the mortgaged property be sold subject to appraisement.

On September 4, 1992, FCB filed a motion for summary judgment. However, the Zerrs subsequently filed a Chapter 12 bankruptcy, leaving this matter dormant until 1994. On April 4, 1994, the bankruptcy court dismissed the Zerrs' bankruptcy, and on May 10, 1994, FCB filed a motion for judgment on the pleadings as well as summary judgment. The district court granted FCB's motion and entered a journal entry of foreclosure on June 16, 1994. The amount due and owing on the note and mortgage was $864,858.28, plus interest and the costs of the action.

Pursuant to the foreclosure action, the 2,180 acres of real estate was sold at a sheriff's sale for a total of $632,000. FCB successfully bid on all the property. The district court confirmed the sale and entered a deficiency judgment in favor of FCB for $257,948.25. To help satisfy its deficiency, FCB executed on four additional tracts of real estate owned by the Zerrs. The sheriff offered the four tracts for sale on September 23, 1994.

Prior to the sale, FCB filed a motion to establish redemption rights, and the Zerrs similarly filed a motion for a sale subject to appraisement and to establish redemption rights. The district court found that K.S.A. 60-2414(m) was applicable and set a redemption

period of 3 months from the date of the sale. Three tracts of real estate were sold at a sheriff's sale on August 29, 1994.

On October 10, 1994, the district court heard FCB's motion for confirmation of the second sale. The appraiser for the Zerrs testified that one of the tracts had a value of $199,000 and that FCB had successfully bid the property at $170,200. On November 9, 1994, the district court filed its order confirming the sheriff's sale and found that a deficiency judgment of $23,416.85 still remained. The fourth tract of land, which was not sold at the sale, was later republished and sold at a subsequent sheriff's sale.

The Zerrs contend the district court erred in setting a redemption period of 3 months. They argue the provisions of K.S.A. 60-2414(m) establishing a 3-month redemption period are not applicable.

The statutory right of redemption is a judgment debtor's privilege to regain property lost by sale under process by permitting purchase at the price at which the property was sold. *Southwest State Bank v. Quinn*, 198 Kan. 359, Syl. ¶ 2, 424 P.2d 620 (1967). Kansas case law on redemptive rights shows that the right of redemption is controlled by statute. See *Federal Land Bank v. Hart*, 157 Kan. 664, 143 P.2d 649 (1943); *Piatt v. Flaherty*, 96 Kan. 42, 149 Pac. 734 (1915); *Federal Land Bank of Wichita v. Brown*, 15 Kan. App. 2d 302, 305, 807 P.2d 702, *rev. denied* 248 Kan. 995 (1991) (ability of holder of first mortgage to redeem property from a successful purchaser at sale); *Federal Savings & Loan Ins. Corp. v. Treaster*, 13 Kan. App. 2d 305, 770 P.2d 481 (1989) (court's discretion in extending the redemption period).

Our standard of review is clearly one of statutory interpretation. "Interpretation of a statute is a question of law. An appellate court's review of a question of law is unlimited." *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

The general rule is that a defendant owner is entitled to redeem real property sold under execution or order of sale within 12 months after the date of the sale. K.S.A. 60-2414(a) provides in applicable part:

"Except as stated in subsection (m) and as otherwise provided by law, the defendant owner may redeem any real property sold under execution, special execution or order of sale, at any time within 12 months from the day of sale, for the amount paid by the current holder of the certificate of purchase, including expenses incurred by the holder of the certificate of purchase in accordance with subsection (d), together with interest at the rate provided for in subsection (e)(1) of K.S.A. 16-204, and amendments thereto, costs and taxes to the date of redemption."

An exception to the 12-month redemption period is found in K.S.A. 60-2414(m). Even in early Kansas redemption law, one who had paid less than ⅓ of an agreed purchase price for realty was only entitled to a 6-month redemption period in a foreclosure action. G. S. 1909, § 6098. See *Ruf v. Grimes*, 104 Kan. 335, Syl. ¶ 4, 179 P. 378 (1919); *Hines v. Kays*, 93 Kan. 209, 211, 144 Pac. 240 (1914); *Neef v. Harrell*, 82 Kan. 554, 109 Pac. 188 (1910). This 6-month redemption period was recently embodied in the 1992 Kansas Legislature's amendment to 60-2414. L. 1992, ch. 320, § 1. These amendments became effective July 1, 1992.

In 1994, the Kansas Legislature again amended 60-2414(m), reducing the redemption period in specified situations from 6 months to 3 months. L. 1994, ch. 230 § 1. The 1994 amendments became effective July 1, 1994. K.S.A. 60-2414(m) currently provides:

"In the event a default occurs in the conditions of the mortgage or instrument of the most senior lien foreclosed before ⅓ of the original indebtedness secured by the mortgage or lien has been paid, the court shall order a redemption period of three months. If, after proper showing, the court finds that the total outstanding amount of all mortgages or liens is less than ⅓ of the market value of the property, the court shall order a redemption period of 12 months. If the court finds after a hearing with not less than 21 days' notice to all parties, that the defendant owner has involuntarily lost such owner's primary source of income after the date of the foreclosure sale and prior to expiration of a three-month period of redemption, the court may extend the three-month period of redemption an additional three months. If the court orders a redemption period of six months or less, the right of the defendant owner or successors and assigns to redeem is exclusive for the first two months of the redemption period. This subsection shall not apply in the event redemption rights have been shortened, waived or terminated pursuant to subsection (a)."

The question before the court is whether the present case falls within this exception. Does the reduced redemption period in the above-cited subsection apply to real property that has been executed upon in order to satisfy a *deficiency judgment*? The answer is no.

In the case at bar, FCB foreclosed the Zerrs' mortgage and note and sold all the property at the sheriff's sale. The Zerrs had not paid ⅓ of the original indebtedness on this mortgage and pursuant to K.S.A. 1992 Supp. 60-2414(m), the district court correctly granted a 6-month period of redemption. After the sale of all the mortgaged property, a deficiency of approximately $258,000 still remained. The Zerrs argue that at this time FCB was nothing more than a unsecured creditor with a deficiency judgment. FCB then executed on four other tracts of real estate, and the district court decided pursuant to K.S.A. 60-2414(m) that the Zerrs would only have 3 months after the sheriff's sale in which to redeem the property.

The Zerrs raise two arguments as to why the 3-month redemption period is inapplicable to their case. First, the sheriff's sale for the deficiency judgment was not predicated upon a default in the condition of a "mortgage or instrument" in the context of K.S.A. 60-2414(m), but was rather a simple monetary judgment. Second, they contend that even if the deficiency judgment is somehow considered an extension of the note and mortgage, FCB has already received $632,000 by selling the mortgaged property and thus ⅓ of the original indebtedness has been paid.

The Zerrs also contend the case at bar was not a situation contemplated by the legislature in providing the 3-month exception. They believe the amendments were designed to address a perceived prejudice to mortgage lenders in the existing redemption law by allowing a shorter period in situations where ⅓ of the original indebtedness has not yet been paid. The scales balance in favor of the creditors instead of the borrowers in such a situation. The Zerrs submit the foregoing considerations are illogically applied to the present situation. FCB had already obtained full benefit of the mortgaged property. The property sold to satisfy the *deficiency* judgment was simply a nonexempt asset of the judgment debtor.

The Zerrs argue that FCB had no contractual rights in the property, that "equity" in this situation is inapplicable, and that they had 100% equity in the real estate sold at the sale.

FCB argues that the Zerrs failed to pay the deficiency judgment within the statutory time frame and, as a result, it executed against unencumbered real estate. FCB claims it is the default on the deficiency judgment that gives rise to the reduced redemption period under K.S.A. 60-2414(m). Therefore, the lien referred to in K.S.A. 60-2414(m) is the deficiency judgment entered on August 19, 1994, and the district court correctly set a 3-month redemption period because ⅓ of that indebtedness had clearly not been paid.

We are asked to construe an exception to the general rule of a 12-month redemption period. We are guided by the following established principles. " 'It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained.' [Citation omitted]." *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). It must be remembered that ordinarily a strict or narrow interpretation is applied to statutory exceptions. Furthermore, in construing a statute, any doubt should be resolved against the exception, and anyone claiming to be relieved from the statute's operation must establish that he or she comes within the exception. *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. 40, 44, 397 P.2d 360 (1964).

A mortgagor's redemptive rights are zealously guarded in Kansas. See *Quinn*, 198 Kan. 359, Syl. ¶ 2; *Broadhurst Foundation v. New Hope Baptist Society*, 194 Kan. at 42-43. The court in *Mid Kansas Fed'l Savings & Loan Ass'n v. Zimmer*, 12 Kan. App. 2d 735, 738, 755 P.2d 1352 (1988), stated that "[p]ublic policy strongly supports the right of redemption." A statutory provision for the redemption of real property from an execution sale should, as a statute remedial in character, be given a broad and liberal construction, so as to effectuate its purpose and encourage redemption. 30 Am. Jur. 2d, Executions and Enforcement of Judgments § 435, p. 284. The purpose of the redemption statute is to prevent hardship and inequity. *Needham v. Young*, 205 Kan. 603, 606, 470 P.2d 762 (1970).

When the district court granted FCB a deficiency judgment, FCB automatically received a judgment lien against all of the Zerrs' real property. K.S.A. 60-2202(a) provides that any judgment rendered by the district courts of Kansas in an action commenced under Chapter 60 of the Kansas Statutes Annotated shall be a lien on the real estate of the judgment debtor within the county in which judgment is rendered. See Astle, Collecting Judgments in Kansas, pp. 82-84 (1992). We believe that an execution on property pursuant to this lien is subject to the general 12-month redemption period and does not fall within the purview of the 3-month exception under K.S.A. 60-2414(m).

The language of K.S.A. 60-2414(m) is clear and unambiguous. There are three factors that we believe demonstrate the intent of the legislature and at the same time preclude this case from application of the exception. First, the statute states "[i]n the event of a default." Contrary to FCB's statement, no "default" has occurred with regard to the deficiency judgment. Furthermore, there is no statutory time frame in which the Zerrs were required to pay the deficiency judgment. The facts of this case demonstrate that virtually no time expired from the time the district court entered the deficiency judgment on August 19, 1994, and FCB's execution on the four tracts of real estate on August 22, 1994.

Second, a default has to occur "in the conditions of the mortgage or instrument." There were no conditions which the Zerrs had to abide by under the deficiency judgment. Last, the original indebtedness of the deficiency judgment was not "secured" by a mortgage or lien. It is obvious from the language of K.S.A. 60-2414(m) that the reduced redemption period was intended to apply in situations of collateral used to secure a loan or a mortgage, not executions upon real property to satisfy a deficiency judgment.

It appears the legislative intent of a shortened redemption period under K.S.A. 60-2414(m) is to prevent equity skimming. See K.S.A. 60-1101 and K.S.A. 21-4410. A shortened redemption period theoretically helps deter the practice of skimming by shortening the time period an equiteer has control of the property. The legislature heard ample testimony before amending 60-2414(m) in 1994 that real estate lenders face substantial problems when re-

covering property that has been rented by an equiteer. Many times the property is in such poor condition that substantial improvements must be made before trying to resell it. This occurs because many equiteers have no real vested interest in seeing that the property is maintained once it is rented. The equiteers also do not pay property taxes, and the lenders are essentially forced into paying the property taxes in order to avoid a state-imposed tax lien on the property. Senate Committee on Judiciary, March 16, 1994, attachments 5-13, H.B. 2992.

Kansas case law and other supporting authority recognize the general 12-month redemption period in cases involving executions on a judgment. In *Ropfogel v. Enegren*, 7 Kan. App. 2d 644, 646 P.2d 1138 (1982), the plaintiff obtained a $250,000 judgment against the defendants, and the court granted a 12-month redemption period on a number of parcels of land which were sold pursuant to writs of execution. In *Anspacher & Assocs., Inc. v. Leslie*, 5 Kan. App. 2d 348, 616 P.2d 297 (1980), the district court set a 12-month redemption period for property sold at an execution sale.

The Zerrs should have been granted a 12-month period in which to redeem the property sold to satisfy the deficiency judgment. Our decision in no way hampers the ability of the holder of a deficiency judgment to obtain a shortened redemption period or extinguish the redemption period where the proper showing is made under K.S.A. 60-2414(a) that the property is abandoned or is not occupied in good faith. We must reverse and remand to the district court for further proceedings consistent with this opinion. We note other issues such as the disposition of the proceeds of a crop need to be addressed at the district court level.

Next, the Zerrs argue that at the confirmation hearing the district court erred in not considering the appraised value of one of the tracts of land sold at the sheriff's sale. It appears that they argue the court abused its discretion by not crediting them with the appraised value of their property or at least deferring confirmation of the sale until after a hearing to determine the value of the property.

In contrast, FCB argues that even considering the evidence in the light most favorable to the Zerrs, there was only about a 15% difference in the value of the property in question. FCB directs the court's attention to the appraiser's testimony that the sales at a sheriff's sale are normally depressed values. However, the appraiser stated that one could get more than the value of the property, but normally that is not the case.

. We are required to determine whether, under these facts and circumstances, the trial court abused its discretion by confirming the sale. "Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973). This court has recently reiterated that under K.S.A. 60-2415, the district court has the discretion to refuse to confirm a sheriff's sale if it finds the bid substantially inadequate, but its decision of whether or not to confirm must be supported by the record. See *Olathe Bank v. Mann,* 17 Kan. App. 2d 112, 115, 834 P.2d 1365 (1992), *aff'd* 252 Kan. 351, 845 P.2d 639 (1993).

K.S.A. 60-2415 governs the confirmation of a sheriff's sale and governs this specific issue. It provides in pertinent part:

"The court may decline to confirm the sale where the bid is substantially inadequate, or in ordering a sale or a resale, may, in its discretion, if conditions or circumstances warrant and after a proper hearing, fix a minimum or upset price at which the property must be bid in if the sale is to be confirmed; or the court may, upon application for the confirmation of the sale, if it has not theretofore fixed an upset price, conduct a hearing to establish the value of the property, and as a condition to confirmation require the fair value of the property be credited upon the judgment, interest, taxes and costs. A sale for the full amount of the judgment, taxes, interest and costs shall be deemed adequate." K.S.A. 60-2415(b).

The Zerrs take issue with the real estate described as the North 468 acres of Section 5, Township 13 South, Range 28 West of the 6th P.M. The Zerrs provided testimony at the confirmation hearing from an appraiser that the market value of this property was $199,000, approximately $29,000 more than what FCB bid and ultimately paid for the property at the sheriff's sale. They argue

that in the interest of public policy, the manipulation that can occur at a sheriff's sale requires the district court to diligently protect the rights of the borrowers by insuring that fair value of the property is obtained. Citing K.S.A. 60-2415(b), the Zerrs argue the district court failed to take any of three statutory options: (1) refuse to confirm the sale and order a resale; (2) order a resale subject to a minimum bid; or (3) conduct a hearing to establish the value of the property and make confirmation conditioned upon the fair value of the property being credited to the judgment.

The court in *Olathe Bank* described the considerations in determining whether "fair value" of real property was received at a sheriff's sale.

" 'Fair value,' for the purpose of credit upon a deficiency claim arising out of a mortgage foreclosure proceeding, is that sum which the mortgagee purchaser should, under all circumstances, reasonably expect to realize from the acquired premises, either by way of sale in the future or upon the basis of a permanent investment. 'Fair value' is not market value, fair market value, reconstruction or replacement value, real value, intrinsic value, or income value alone, nor is it the highest and best price that the property would bring in cash. 'Fair value' means value of property which will produce a fair and equitable result between the parties." 17 Kan. App. 2d 112, Syl. ¶ 4.

We look to several Kansas cases for guidance as to whether the Zerrs received "fair value" for the property sold at the sheriff's sale on the deficiency judgment. In *Broughton v. Murphy*, 155 Kan. 454, 126 P.2d 207 (1942), the trial court determined the reasonable value of the property was $2,500 and refused to confirm a sale for $800. The case was affirmed on appeal. 155 Kan. at 455, 457. In *Liberty Savings & Loan Ass'n v. Jones*, 143 Kan. 422, 425, 54 P.2d 937 (1936), the trial court heard conflicting evidence of the property's value at the confirmation hearing. The trial court determined the bid was "substantially the real value of the property" and confirmed the sale. The *Jones* court found abundant competent evidence to support that finding and refused to reverse the trial court. In contrast, in *Liberty Savings & Loan Ass'n v. Hanson*, 145 Kan. 174, 175-76, 64 P.2d 609 (1937), the court reversed the trial court and ordered confirmation because there was "no substantial disparity between the actual value of the property and the

selling price at the sale in foreclosure" and there was no irregularity in the proceedings.

In rendering its decision confirming the second sheriff's sale, the district court found that a substantially adequate price had been obtained for the three tracts of real property. The court stated:

"The defendants claim that the sale of their mortgaged property should be set aside because the value of the property was more than the price garnered at the sheriff's auction. The evidence and the exhibits, however, do not bear out the defendants' claim. In order for the Court to decline to confirm the sale, the Court must find that the bids submitted were substantially inadequate. The evidence reflects the contrary. In looking at the evidence in the light most beneficial to the defendants, there may have been a 15% variance in the actual value of the property as opposed to the bid garnered by the sheriff's sale. The Court cannot find that this bid then is substantially inadequate. The Court finds no other circumstances which in the Court's discretion it could refuse to confirm the sale."

We find the district court did not abuse its discretion in confirming the sheriff's sale. Also, we do not find that the 15% variance in the value of the property and the price paid by FCB was substantially inadequate to deny confirmation.

Finally, the Zerrs argue the district court erred in entering the confirmation of sale because of the erroneous description of one of the tracts of real estate. They contend the notice was factually incorrect and, therefore, the sale should not have been confirmed because it was insufficient as a matter of law. On the other hand, FCB submits that the error was discovered prior to the sale and the sheriff did not sell the affected property at sale; thus, the district court did not abuse its discretion in confirming the sale of the other property.

The execution, order of the sale, and notice of the sale, including the published notice, all contained an erroneous description of one of the four tracts of real estate for sale. The property was described as the *Northeast* Quarter of Section 30 but should have been described as the *Northwest* Quarter of Section 30. In the way of explanation, the East ½ of the Northeast Quarter of Section 30 was sold at the sheriff's sale for the mortgage foreclosure and the West ½ of the Northeast Quarter of Section 30 was encompassed in one of the descriptions of the other three tracts of real estate

offered for sale to satisfy the deficiency judgment. Prior to the sale, FCB informed the sheriff of the error. At the sale, the sheriff announced the error and that neither the Northeast nor the Northwest Quarters of Section 30 would be sold. However, the sheriff sold the three other tracts of real estate not affected by the error.

The Zerrs cite provisions in K.S.A. 60-2415(a) as authority. It provides in relevant part that "[i]f the court finds the proceedings regular and in conformity with law and equity, it shall confirm the same." K.S.A. 60-2415(a). The Zerrs speak of the inequity in allowing this sale to stand in light of the erroneous description. They argue that anyone reading the published notice could see that a portion of the real estate was included in two parcels listed for sale. They contend there is no way of knowing whether potential bidders were confused or discouraged by the incorrect notice. The Zerrs contend this issue was not an issue for the trial court to weigh.

FCB cites *Carter v. Hyatt*, 76 Kan. 304, 91 Pac. 61 (1907). In *Carter*, the court considered whether the failure of the clerk to affix his seal to the order of sale rendered all the subsequent proceedings void. 76 Kan. at 305. In upholding the sale, the *Carter* court stated: "The weight of authority seems to be that in the absence of fraud or circumstances that might affect substantial rights the court may cure by confirmation any infirmity in the proceedings which it could correct by immediately ordering a new sale." 76 Kan. at 310.

We find that the sheriff took the appropriate corrective measures by not selling the improperly described property at the sale. The record is also void of any circumstances demonstrating fraud or an infringement of the Zerrs' substantial rights. The Zerrs' claim that individuals could be confused or discouraged by the incorrect notice is nothing more than speculation. Besides, if an individual is truly interested in purchasing the property described in the notice, he or she will attend the sheriff's sale regardless of the error. We find the district court did not abuse its discretion in confirming the sale

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.